FILED
John E. Triplett, Acting Clerk
United States District Court

By mgarcia at 3:43 pm, Sep 25, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| JANICE THERESA DOLLAR, as personal representative of the Estate of Michael Lamar Dollar, and individually,<br><br>    Plaintiff,<br><br>    v.<br><br>MONSANTO COMPANY,<br><br>    Defendant. | CIVIL ACTION NO.: 2:20-cv-78 |

## ORDER GOVERNING PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

This matter is before the Court on the parties' joint request for entry of an order governing discovery of electronically stored information.  Doc. 11.  After a review of the record, the Court finds that good cause to enter such an order exists.  The Court, therefore, **GRANTS** the parties' joint request, doc. 11, and **ORDERS** that the discovery of electronically stored information shall occur as follows:

I.      **Production Format of Defendant's Electronically Stored Information**

   A.      **Definitions**

      1.      "Document" means paper documents or electronically stored information (ESI) existing in any medium from which information can be obtained or translated into reasonably usable form.

      2.      "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed or modified.

3.    "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

4.    "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) image is an example of a Static Image.

5.    "Load/Unitization file" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load/Unitization file will also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

6.    "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

7.    "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information.

8.      Parties will use reasonable, best efforts to comply with the terms of this production format.  In the event a party determines that it cannot materially comply with any requirement herein, they will disclose their inability to comply and parties will meet and confer regarding resolution of the identified issue.

**B.      Format of Production**

*1.      Paper Documents*

Paper documents, including spreadsheets maintained in paper form, will be produced as TIFF images (consistent with the specifications in § I.B.2.(a)).  The production will include the appropriate Load/Unitization files which will, at a minimum, contain the following fields (described in detail in  I. B. 2. (e). *infra*.):

(a)      Beginning Production Number (ProdBeg),

(b)      Ending Production Number (ProdEnd),

(c)      Beginning Attachment Production Number (BegAttach),

(d)      End Attachment Production Number (EndAttach),

(e)      Custodian/Source,

(f)      Confidentiality,

(g)      Document Type,

(h)      Page Counts, and

(i)      OCR.TXT file.

In scanning paper documents, if a document is more than one page, to the extent reasonably possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the producing party.  The parties may unitize their

documents using either physical unitization (i.e., based on physical binding or organizational elements present with the original paper documents like staples, clips and binder inserts) or logical unitization (i.e., a manual review of the paper to determine what logically constitutes a document like page numbers or headers).  The parties will meet and confer to resolve any related issues.

        **2.**     ***ESI***

        (a)     All TIFF-formatted documents will be single page, Group 4 TIFF at 300 x 300 dpi resolution and 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size.  The requesting party retains the right to request a TIFF image in a higher resolution or larger page size if necessary to render the image legible or understandable.  If a color image is produced in black and white, the receiving party may request the producing party to produce the original, color image.  After receiving such a request for color production, the parties will meet and confer on a reasonable and cost-effective means of providing the requested documents.  To the extent possible, the original orientation shall be maintained (e.g., portrait-to-portrait and landscape-to-landscape).  Such files will be grouped in folders of no more than 1,000 TIFF files each unless necessary to prevent files from splitting across a folder.

        (b)     In the absence of agreement of the parties or order of Court, a Static Image will be provided in TIFF format (.TIF files).  The image file names shall match the Bates number assigned to the image.  All

documents are to be provided with multi-page searchable OCR or Extracted Text files, as described in paragraph (c).

(c)     **Text Files**.  Full extracted text will be provided in the format of a single *.txt file for each file (e.g., not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file.  The full path of the text file should be provided in the *.dat data load file.

(d)     There will be two Load/Unitization files accompanying all productions.  One will be the Image load file and the other will be the Metadata load file.  The specifics of these files are detailed in (i) and (ii) below:

> **(i)     Image Load File**
>
> - Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.
>
> - Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being

a replacement document in the Replacement field of the data load file.

- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii* extension (e.g., ABC001.lfp).  The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.)  *If .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.*

- The load file shall contain one row per TIFF image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the page.  Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

**(ii)     Metadata Load File**

- The metadata load file shall use the following delimiters:

    - Column Delimiter: Pipe - | (ASCII 124)

    - Text Qualifier: Caret - ^ (ASCII 94)

    - New line: Registered sign - ® (ASCII 174)

- Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as

being a replacement document in the Replacement field of the data load file.

- The first record shall contain the field names in the order of the data set forth in (B. 2. e.).  Metadata fields that are not applicable to a document shall be filled with a NULL value along with fields that were not able to be obtained due to a processing error or corrupt file.

- All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM" format.

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (i.e., ABC001.dat).

- The volume names shall be consecutive for each produced source.  (i.e., ABC001, ABC002, et. seq.).

(e)      Except as set forth herein, ESI will be produced to the requesting party as Static Images together with a Load/Unitization file that will contain the Metadata fields described below on the document level, except as set forth in section (B.) (2.) (l.) infra.  The following fields associated

with each electronic document including the body of the document, will be produced in the appropriate Load/Unitization file.

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 1 | SOURCE | SOURCE | Name of party producing the document | All | L |
| 2 | CUSTODIAN | CUSTODIAN | Name of person or data source (non-human) from where documents/ files are produced.  **Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.)* | All | M or L |
| 3 | CUSTODIAN ID | CUSTODIAN ID | Each CUSTODIAN from #2 above will be assigned a unique numeric identifier that will be maintained throughout productions. | All | M or L |
| 4 | BEGBATES | BEGDOC# | Beginning Bates Number (production number) | All | L |
| 5 | ENDBATES | ENDDOC# | End Bates Number (production number) | All | L |
| 6 | PGCOUNT | PGCOUNT | Number of pages in the document | All | L |
| 7 | FILESIZE | FILESIZE | File Size | All | M |
| 8 | APPLICAT | APPLICAT | Commonly associated application for the specified file type.  (See 2 (l) below). | All | M |
| 9 | FILEPATH | FILEPATH (for Edocs) FOLDER (for emails) | File source path for all electronically collected documents and emails, which includes location, folder name, file name, and file source extension. | All | M |

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 10 | NATIVEFILELINK | DOCLINK | For documents provided in native format only | All | L |
| 11 | TEXTPATH | LOGFILE or FULLTEXT | File path for OCR or Extracted Text files per paragraph (d) above | All | L |
| 12 | MSGID | MSGID | Email system identifier assigned by the host email system. Value extracted from parent message during processing | Email | M |
| 13 | FROM | FROM | Sender | Email | M |
| 14 | TO | TO | Recipient | Email | M |
| 15 | CC | CC | Additional Recipients | Email | M |
| 16 | BCC | BCC | Blind Additional Recipients | Email | M |
| 17 | SUBJECT | SUBJECT | Subject line of email | Email | M |
| 18 | PARENTBATES | PARENTID | BeginBates number for the parent email of a family (will not be populated for documents that are not part of a family) | Email | L |
| 19 | ATTACHBATES | ATTACHID | Bates number from the first page of each attachment | Email | L |
| 20 | BEGATTACH | (will be provided from ATTRANGE) | First Bates number of family range (i.e. Bates number of the first page of the parent email) | Email | L |
| 21 | ENDATTACH | (will be provided from ATTRANGE) | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) | Email | L |
| 22 | ATTACHCOUNT | ATTACHMENT COUNT | Number of attachments to an email | Email | L |
| 23 | ATTACHNAME | ATTACHMENT LIST | Name of each individual attachment | Email | M |
| 24 | DATESENT (mm/dd/yyyy hh:mm:ss AM) | DATESENT | Date Sent | Email | M |

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 25 | DATERCVD (mm/dd/yyyy hh:mm:ss AM) | DATERCVD | Date Received | Email | M |
| 26 | EMAILDATSORT (mm/dd/yyyy hh:mm:ss AM) | DATESENT | Sent Date of the parent email (physically top email in a chain, i.e. immediate/direct parent email) | Email | L |
| 27 | READ/UNREAD | | Whether the Outlook item was read or unread at the time of collection. Values provided will be "Yes" for read, "No" for unread, and a null value where the read/unread flag value is unavailable. | Email | M |
| 28 | Email Outlook Type | Email Outlook Type | Type of Outlook item, e.g. email, calendar item, contact, note, task | Email | M |
| 29 | HASHVALUE | MD5 HASH | MD5 Hash Value for Edocs | Edocs | M |
| 30 | TITLE | DOCTITLE | Title provided by user within the document | Edocs | M |
| 31 | AUTHOR | AUTHOR | Creator of a document | Edocs | M |
| 32 | DATECRTD (mm/dd/yyyy hh:mm:ss AM) | DATECRTD | Creation Date | Edocs | M |
| 33 | MODIFIED BY | LAST EDITED BY | Person who has modified a document | Edocs | M |
| 34 | LASTMODD (mm/dd/yyyy hh:mm:ss AM) | LASTMODD (mm/dd/yyyy hh:mm:ss AM) | Last Modified Date | Edocs | M |

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 35 | DocumentType | DocumentType | Descriptor for the type of document: "**E-document**" for electronic documents not attached to emails; "**Emails**" for all emails; "**E-attachments**" for files that were attachments to emails; and "**Physicals**" for hard copy physical documents that have been scanned and converted to an electronic image. | All | M |
| 36 | Importance | Importance | High Importance – indicates Priority in Email message. | Email | M |
| 37 | Redacted | Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | All | M |
| 38 | ProdVol | ProdVol | Name of media that data was produced on.<br><br>Wave 001 – Hard Drive | All | M |
| 39 | Confidentiality | Confidentiality | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective Order. "Yes" for Confidential documents; "No" for documents that are not so designated. | All | M |
| 40 | Color | Color | Flag to indicate that document contains color. Values provided will be "Yes" for color, "No" for no color, | All | M |

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 41 | FILENAME | @C FILENAME | Original filename at the point of collection, without extension of native file | All | M |
| 42 | FILEEXTENSION | @C FILEEXT | File extension of native file | All | M |

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI; that do not exist as part of the original Metadata of the document; or that would be burdensome or costly to obtain.  The parties retain the right to move the Court for the production of additional electronic metadata fields should ongoing discovery reveal the need for such Metadata.  The designation of a document as a "Protected Document" pursuant to the Protective Order of Confidentiality shall include the metadata produced for that document.

> (f)     **Bates Numbering**: All images should be assigned a Bates/control number that shall always: (1) be unique across the entire document production; (2) maintain a constant length (zero/0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production.  Production Bates numbers shall be endorsed on the lower right corner and shall not obscure any portion of the original file.  Confidentiality designations, if any, shall

be endorsed on the lower left corner of applicable images and shall not obscure any portion of the original file.

(g)     When processing ESI, GMT should be selected as the time zone. To the extent that a party has already processed ESI using a different time zone, the producing party will note the time zone used in its processing.

(h)     Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

(i)     When the Static Image is produced, the producing party shall make reasonable attempts to maintain and not modify the original Native File and its metadata.

(j)     The parties will meet and confer regarding collection and production of ESI stored in databases and other structured data under the custody and control of the parties.

(k)     Electronic file collection will be "De-NISTed", removing commercially available operating system and application files contained on the current NIST file list. Identification of NIST list matches will be through MD5 Hash values.

(*l*)     User-generated files that have been collected that cannot be produced or imaged because of technical issues should be identified as exception files and included on a log that lists all metadata set forth in paragraph 2(e) except that the metadata for the APPLICAT field will be

obtained from binary encoding from the file, and reason for exception: for example, corruption, unavailable password protection, proprietary software, or other technical issues.  The producing party shall provide a copy of this log with its production.  If the receiving party requests production of any files listed on the exception log, the parties will meet and confer, including on any reasonable and cost-effective means of providing the requested data.

(m)      "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash value.  The producing party need only produce a single copy of responsive Duplicate ESI.  De-duplication shall not break apart families and shall be performed at a family level.  Defendants will globally (e.g., both within a particular custodian's file and across all custodian/databases) de-duplicate identical ESI as follows:

**Electronic Files:**  Electronic files will be de-duplicated based upon calculated MD5 Hash values for binary file content.  File contents only will be used for MD5 Hash value calculation and will not include operating system metadata (filename, file dates) values.

**Messaging Files:**  Messaging files will be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments.  The following fields will be used to create the unique value for each message:  To; From; CC; BCC; Date Sent; Subject; Body; and, MD5 Hash values

14

for all attachments, in attachment order.  Messaging materials
will be de-duplicated at a family level, including message
and attachment(s).

**Log Files:**  For the existing file collection containing fully
processed duplicate files and messages, duplicate documents
will be listed in a de-duplication log including the same
agreed production format meta-data structure and data
delivery criteria as for the "master" production documents.
Moving forward, as collected electronic materials are
globally de-duplicated during system intake using the above
guidelines, defendants will produce logs containing the meta-
data field values for de-duplicated files.  As document
production begins for additional custodians and during
rolling productions for existing custodians, an updated de-
duplication log shall be produced for each production.  The
metadata provided will be an accurate representation of the
data existing for the documents at the time of collection.

(n)    **Parent-Child Relationship.**  Parent-child relationships (e.g., the
associations between emails and their attachments) shall be preserved.
Email and other ESI attachments will be produced as independent files
immediately following the parent or email or ESI records.  Parent-child
relationships will be identified in the data load file pursuant to § I. B. 2.
(e).

(o)      **Email Threading.**  Email threads are email communications that contain prior or lesser-included email communications that may also exist separately in a party's electronic files.  A most inclusive email thread is one that contains all of the prior or lesser-included e-mails, including attachments, for that branch of the email thread.  The producing party shall produce the most inclusive email thread and all prior or lesser included email threads that were collected and identified as responsive and not privileged.

(p)      **Embedded Objects**:  Objects embedded in Microsoft Word and .RTF will be extracted as separate documents and produced as attachments to the document.

(q)      **Compressed files.**  Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and files.

(r)      **Replacement files**:  Any documents that are replaced in later productions shall be clearly designated as such, by appending a "-R" to the production prefix and by a letter accompanying the production clearly designating such documents as replacements.

(s)      **Native Files**.  The parties acknowledge that production in TIFF and load file format may be inadequate for certain types of ESI (e.g. spreadsheets).  The following files shall be produced in native format (except for redacted documents):

i.      All audio files and video files shall be produced in native format with the source file path provided.

ii.      Electronic spreadsheet (e.g., Excel), electronic presentations (e.g., PowerPoint), desktop databases (e.g., Access), and audio/video multimedia files shall be produced in native format whenever possible.  The production of the electronic spreadsheets shall include hidden rows, columns and worksheets.  Native Excel files will be redacted by overwriting the data contained in a particular cell, row, column or tab with the term "REDACTED."  If the production party deems it necessary to produce redacted Excel (or other spreadsheet formats) in any format other than Native, the parties should meet and confer before such a production is made.

iii.      **Electronic presentations** (e.g. PowerPoint).  The production of the electronic presentation files shall include comments, hidden slides, speaker notes, notes and similar data.  To the extent native files are produced without an accompanying rendering of TIFF images, a slip sheet will be produced in TIFF format to facilitate Bates and confidentiality stamping.  If documents requested in native format require redactions, the parties will produce TIFF images for those documents.  Confidentiality of documents produced in native will be noted in the File Name along with the Bates number and in a metadata field.  If a dispute arises with respect to the provision, the parties agree to meet and confer in

17

an effort to resolve their differences.  Should the producing party collect Statistical Analysis System, the parties shall meet and confer regarding production format prior to production.

iv.        **Word Processing Files.**  Word processing files including limitation Microsoft Word files (*.doc and *.docx), with tracked changes and comments showing.  Such word files will be produced in native format.

(t)        **Emails.**  Emails will be produced with the CC and BCC line displayed.

(u)        **Word Processing Files.**  Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced with tracked changes and comments showing.  Supplemental requests for native format and color copies will be governed by Section I. B. 2. (a)., above.

(v)        Any native files that are produced shall be produced with the source file path provided, as well as all extracted text and applicable metadata fields set forth in § I. B. 2. (e).

(w)        The parties shall exchange production samples as follows: (1) standard production from each source (physical, email, electronic document, native, etc.) which fully exercises the metadata fields set forth above; (2) replacement production; (3) clawback.

(x)        **Redacted Document Log**.  The producing party will provide a log identifying by bates/production number each document that contains a redaction and the reason for the redaction.  In addition, if the redaction is

based on attorney-client privilege or the work-product doctrine, the document also will be addressed on the privilege log and comply with any order entered governing the privilege log.

(y)     **Privilege Log**.  Privilege logs shall be produced in PDF format and shall be accompanied by an Excel copy of the log.  The PDF copy will be the official privilege log of record.  The privilege log also shall comply with any order entered governing the privilege log.

(z)     **Suppressed Metadata Log.**  The producing party will provide a log identifying by bates/production number each document that contains metadata field values subject to Privacy or Privilege exceptions.  Suppressed field values will be replaced in whole with a "REDACTED" placeholder value.  The log will provide the document BEGBATES value, field name suppressed and the suppression reason.

(aa)    **Foreign Language Documents.**  All documents shall be produced in their original language.  If two documents are substantially identical except that they are in different languages, they shall not be treated as exact duplicates.  Nothing in this agreement shall require a producing party to prepare a translation or certify the translation that they possess.

**C.    Objections to Production of ESI**

1.     Nothing in this agreement waives a party's right to object to production of ESI that is not reasonably accessible because of undue burden or cost. The identification of documents pursuant to this ESI Protocol need not include searches of ESI from sources that are not reasonably accessible

19

because of undue burden or cost.  Such sources that are not reasonably accessible include, but are not limited to: (a) deleted, fragmented or slack data; (b) random access, cache or other ephemeral data; (c) ESI contained on "Backup Systems" (*e.g.*, systems that periodically store electronic information on tape or comparable media to permit recovery of the information in the event of a system failure); (d) on-line data access data such as temporary internet files or cookies; and (e) ESI that cannot be directly opened by its native application due to conversion to a different format for backup or archival purposes.

2.    If asserting an objection based on § II(C)(1), the responding party will inform the requesting party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the requesting party an opportunity to propose an alternative means of compliance with the request, including payment of all or part of the costs of retrieving the information.  If an agreement cannot be reached as to the producing party's objection to production, the parties shall seek judicial assistance.

**D.    Continuing Obligations**

1.    To expedite discovery of relevant electronic evidence and reduce costs, the parties' computer experts will informally cooperate and discuss procedures or protocols to facilitate identification, retrieval and production

of computerized information. This responsibility shall be continuing, unless otherwise ordered by the Court.

2.      The inadvertent production of any materials constituting or containing attorney-client privileged information or attorney work product shall not waive any claim of privilege. If a receiving party disclosed the document(s) or information contained in the document(s) before being notified of its inadvertent production, the receiving party shall take reasonable steps to retrieve that information until the privilege claim has been resolved.

3.      The parties will work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the court. Issues shall be raised promptly in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The parties will use their best efforts to raise any objections or other requests related to a production within ninety (90) days of receipt of that production. In any event, the parties should raise any objections or other issues sufficiently in advance of the close of discovery to permit good faith negotiations to resolve the matter, telephonic conference with the Magistrate Judge pursuant to § VII(B) of the Rule 26 Instruction Order governing this case, and briefing of any related motion such that the court has a reasonable time to rule thereon prior to the close of discovery.

**II.**     **Encryption.**  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

**III.**    **Other Agreements.**  Other orders have been proposed to the Court, may have already been entered, or will be entered in the future that supplement, complement, or otherwise impact application of this Order or discovery in this case.  For example, the parties note that this Order does not govern the content of privilege logs except as noted and a protective and confidentiality order is contemplated.  This Order also does not address the scope of discovery, timing and order of discovery, and the procedure for search and culling of documents to be reviewed.

**IV.**    **Reservation.**  Each party reserves the right to object to production of documents in the format described herein to the extent that production in such format is impracticable or unreasonably burdensome or expensive.

**SO ORDERED**, this 25th day of September, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA